## BRISENDEN v. CHAMBERLAIN.

### (Circuit Court, D. South Carolina. December 28, 1892.)

1. REMOVAL OF CAUSES—STATUTORY RIGHTS—DEATH BY WRONGFUL ACT.
   Section 2 of the judiciary act of 1887-88 gives the right of removal from a state to a federal circuit court only when the latter court would have original jurisdiction under the first section. The first section gives the circuit court original jurisdiction concurrent with the state courts "in all suits of a civil nature at common law or in equity," etc. *Held,* that the phrase "common law" is here used in contradistinction to equity, admiralty, and maritime jurisdiction, and includes all cases involving "legal" rights, whether such rights arise from the settled principles of the common law or are given by statute; and hence a nonresident defendant may remove a suit brought under a state statute giving a right of action for wrongfully causing death.

2. SAME—CITIZENSHIP—RAILROAD RECEIVER.
   A receiver of a railroad company, being a citizen of another state, may remove an action brought against him in his official capacity for causing death by wrongful act, although the railroad company itself is a citizen of the state in which the action is brought.

3. SAME—RESIDENCE—WHAT CONSTITUTES.
   A practicing lawyer, having an office in New York city, and a home and family in the state of New York, was apppointed receiver of a South Carolina railway company, and at frequent, though irregular, intervals went to South Carolina on business connected with the receivership. He had no fixed abode there, but always put up at an hotel during his stay, and returned to New York when his business was finished. *Held,* that he was not a resident of South Carolina, within the meaning of the removal of causes acts, and was entitled to remove a cause brought against him in a court of that state in his official capacity.

4. SAME—PETITION—TIME OF FILING—WAIVER.
   One who has filed a petition for the removal of a cause in a state court before the expiration of the time fixed by the laws of the state or the rules of the state court to plead or answer, has fulfilled the conditions of the removal acts, and the fact that he files his answer in the state court on the same day with his petition is not a waiver of the right to remove.

At Law. Action by Sarah J. Brisenden, administratrix of Henry J. Brisenden, deceased, against Daniel H. Chamberlain, receiver of the South Carolina Railway Company, to recover damages for wrongfully causing the death of the said Henry J. Brisenden. On motion to remand. Denied.

Melton & Melton, for the motion.
Brawley & Barnwall, opposed.

SIMONTON, District Judge. This is an action at law, originally brought in the court of common pleas of the state of South Carolina sitting in Aiken county. The cause of action was the killing of plaintiff's intestate upon the track of the railway of which the defendant is the receiver. The action was brought under the provisions of section 2183, Gen. St. S. C., enacting for that state what is commonly known as "Lord Campbell's Act." The defendant, on the last day provided by the Code of South Carolina of the period within which he was required to answer or demur to the complaint, filed his petition for removal into this court, accompanied

by a proper bond. On the same day he filed his answer. In point of fact the petition preceded the answer, but, as both were filed on the same day, this is of no consequence. The state court heard the petition. No objection was made to its form or to the sufficiency of the bond. The prayer of the petition was refused on two grounds: First, because the action was not at common law, but under a statute; and, second, because the railway company of which the defendant is receiver, and which he represented, was a citizen of the state of South Carolina, of which state plaintiff was also a citizen. A transcript of the record was filed in this court, and the cause removed. Steamship Co. v. Tugman, 106 U. S. 118, 1 Sup. Ct. Rep. 58.

A motion to remand is now made on the grounds taken in the state court and two others: (1) That the action, being under a statute, and not at common law, is not within the jurisdiction of this court; (2) that the real defendant is the South Carolina Railway Company, a citizen of the same state as the plaintiff; (3) that D. H. Chamberlain, the receiver, is resident of the district of South Carolina, and so not entitled to remove the cause; (4) that, the petition having been filed on the same day with the answer, the defendant has submitted to the jurisdiction of the state court, and cannot remove his cause.

The first ground may be thus stated: The second section of the act of 1887–88 permits the removal of a suit of a civil nature at law or in equity only when original jurisdiction has been given to the circuit court of the United States of such suit by the first section of that act. This first section declares: "The circuit courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature at common law or equity," etc. This suit, being a suit at law under Lord Campbell's Act, is not a suit at common law, but under a statute. What is meant by the phrase, "suits of a civil nature at common law?" The constitution of the United States (article 3, § 2) extends the judicial power "to all cases in law or equity, * * * to controversies * * * between citizens of different states." The seventh amendment preserves the trial by jury in suits at common law when the value in controversy shall exceed $20, and requires that no fact tried by a jury shall be re-examined in any court of the United States otherwise than according to the rules of the common law. The act of 1789, (1 U. S. St. at Large, p. 78,) in conferring jurisdiction on the circuit courts of the United States, uses precisely the words of the act of 1887–88: "The circuit courts shall have original cognizance concurrent with the courts of the several states of all suits of a civil nature at common law or in equity," etc. The act of 1875 (18 St. p. 470) uses precisely the same language, but in the removal sections of that act the language is enlarged, and the words "any suit at law" are used. The supreme court decided that under these words a suit could be removed notwithstanding the fact that the court could not have had original cognizance of it. Claflin v. Insurance Co., 110 U. S. 81, 3 Sup. Ct. Rep. 507. To reverse—or perhaps we should say to prevent—such construction in the future, the second section of the act of 1887–88 used the phraseology we have quoted.

What, then, is the meaning of this phrase, "suits of a civil nature at common law?" Mr. Justice Story, in Parsons v. Bedford, 3 Pet. 433, says:

"This phrase 'common law' is used in contradistinction to equity, and admiralty and maritime jurisdiction. By 'common law' they meant what the constitution denominated in the third article 'law,' not merely suits which the common law recognized among its old and settled proceedings, but suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered."

Commenting on this, Mr. Spear, in his Law of the Federal Judiciary, (page 23,) says:

"The term 'law' and the phrase 'common law,' as thus used, then mean precisely the same thing, and both have reference to legal remedies in distinction from such remedies as are applicable to cases in equity."

Mr. Justice Bradley, in Gaines v. Fuentes, 92 U. S. 23, answering the question what is meant by the phrase "suits of a civil nature at common law or equity," used in the section of the act of 1789 conferring original jurisdiction on the circuit courts, and of the word "suit," used in the subsequent section, giving the right of removal, says:

"The phrase 'suits at common law,' and the corresponding term 'suit,' used in these sections, are undoubtedly of broad signification, and cannot be construed to embrace only ordinary actions at law, and ordinary suits in equity; but they must be construed to embrace all litigations between party and party which in the English system of jurisprudence, under the light of which the judiciary act as well as the constitution were framed, were embraced in all the various forms of procedure carried on in the ordinary courts of law and equity as distinguished from the ecclesiastical, admiralty, and military courts of the realm."

It seems manifest from these authorities that the phrase, "all suits of a civil nature at common law," does not mean and is not confined to suits which are based on rights which owe their origin to the common law as distinguished from rights created by statute. The phrase means all those suits in which the rights must be established and the remedies sought by the procedure known and prevailing in the courts of law, as distinguished from the procedure and the remedies prevailing in and administered by courts of equity,—that is, by a court and jury. This is the construction practically taken by the courts of the United States. We see, among many other instances, the court taking jurisdiction of a case arising under a state statute in Gordon v. Longest, 16 Pet. 103. And in Railway Co. v. Cox, 145 U. S. 594, 12 Sup. Ct. Rep. 905, the court enforced the provisions of the Louisiana statute, which is in the words of Lord Campbell's Act, in the circuit court of the United States for a Texas district. The right to do this is asserted in Dennick v. Railroad Co., 103 U. S. 11. The rule is well put in Ex parte McNiel, 13 Wall. 243, decided in 1871:

"A state law may give a substantial right of such a character that, where there is no impediment arising from the residence of the parties, the right may be enforced in the proper federal tribunals, whether it be a court of equity, of admiralty, or of common law. The statute in such cases does not confer jurisdiction. That exists already, and it is invoked to give effect to

the right by applying the appropriate remedy. This principle may be laid down as axiomatic in our national jurisprudence. A party forfeits nothing by going into a federal tribunal. Jurisdiction having attached, his case is tried there upon the same principles, and its determination is governed by the same considerations, as if it had been brought in the proper state tribunal of the same locality."

So in Van Norden v. Morton, 99 U. S. 378:

"Whenever a statute grants a new right, or a new remedy for an old right, or whenever such rights and remedies are dependent on a state statute or an act of congress, the jurisdiction, as between the law side and the equity side of the federal courts, must be determined by the essential character of the case. Unless it comes within some of the recognized heads of equity jurisdiction, the remedy of the party is at law."

2. The next ground upon which the motion to remand is based is that the real defendant is the South Carolina Railway Company, and not the receiver, and that this railway company is a citizen of the state of South Carolina. It is an error to say that the receiver is not a real party in interest. Perhaps the plaintiff could have sued the railway company, leave to that end having been obtained, and the injunction of this court modified accordingly. But a judgment in that event would be posterior in lien to the mortgages on the property. The receiver has been sued in order to give the plaintiff a claim on the property and income in his hands. Ex parte Brown, 15 S. C. 518. The receiver operating the railway is himself a common carrier, and is liable as such. High, Rec. § 398; Jones, Ry. Secur. 511; Ex parte Brown, supra; Cowdrey v. Railroad Co., 93 U. S. 352; Murphy v. Holbrook, 20 Ohio St. 137. In any event, this court, having taken charge of the property of this railroad, and in possession of it, at the instance and on the behalf of the mortgage creditors, has appointed the receiver to hold, supervise, and control it. He represents the property. Recognizing this, the plaintiff has brought this action against him. Now, the jurisdiction of this court, when it is based on the citizenship of the parties, depends upon the citizenship of the parties to the record, and not of those whom they may represent. Bonnafee v. Williams, 3 How. 574; Dill. Rem. Causes, § 101. "Where the jurisdiction of the United States courts depends upon the citizenship of the parties, it has reference to the parties as persons. A petition for removal must therefore state the personal citizenship of the parties, and not their official citizenship, if there can be such a thing." Amory v. Amory, 95 U. S. 187. In Davies v. Lathrop, 12 Fed. Rep. 353, 854, "a receiver is a representative as much as an executor, and his personal citizenship will be regarded on a motion to remand." See, also, Spear, Fed. Jud. p. 151.

3. The next ground for this motion is that D. H. Chamberlain is a resident of the state of South Carolina. The removal act of 1887-88 provides that a case not arising under the constitution and laws of the United States, or under treaties, of which circuit courts of the United States otherwise might have jurisdiction, brought in a state court, may be removed by the defendant therein being a nonresident of that state. It is not easy to give a satisfactory definition of this term "resident." Worcester defines "resident" thus: "Dwelling or having abode in any place; living, inhabiting, abiding, residing."

"He is not said to be resident in a place who comes thither with a purpose of returning immediately." Ayliffe. Reside: To have abode, to live, to dwell, to inhabit, to sojourn. The Century Dictionary defines "resident" thus: "One who has a residence, in a legal sense." "Residence" (in law) is defined: "(a) The place where a man's habitation is fixed, without any present purpose of removing therefrom; domicile. (b) An established abode, fixed for a considerable time, whether with or without a present intention of ultimate removal. A man cannot fix an intentional temporary domicile, for the intent to make it temporary makes it in law no domicile. The abode may be sufficiently fixed to make it in law a residence. In this sense a man can have two residences, but only one domicile. The bankruptcy law uses the term 'residence' specifically, as contradistinguished from 'domicile,' so as to free cases under it from the difficult and embarrassing presumptions and circumstances upon which the distinction between 'domicile' and 'residence' rest. Residence is a fact easily ascertained; domicile is a greater difficulty for proof. Though often used as synonymous, they have in law two distinct meanings." Bump. The distinction between the terms "domicile" and "residence" is clearly set forth in the opinion of the supreme court of Massachusetts to the legislature. Supplement, 5 Metc. 587.

It will be observed from these definitions that both the terms involve the idea of something beyond a transient stay in a place. To be a resident one must abide in a place; have his home there. The essential distinction between "residence" and "domicile" is this: The first involves the intent to leave when the purpose for which he has taken up his abode ceases; the other has no such intent, the abiding is animo manendi. One may seek a place for the purposes of pleasure, of business, or of health. If his intent be to remain, it becomes his domicile; if his intent be to leave as soon as his purpose is accomplished, it is his residence. Perhaps the most satisfactory definition is that one is a resident of a place from which his departure is indefinite as to time, definite as to purpose; and for this purpose he has made the place his temporary home. Apply these to the facts of this case. Mr. Chamberlain has a home in the state of New York, in which he and his family reside. His voting precinct is in that state. He comes into South Carolina at intervals more or less irregular, puts up at an hotel, makes the examination into the conduct of the railway company which he desires, and gives such instructions and directions as he sees fit. He then returns to New York. He does this at frequent intervals during the year. He always stops at an hotel. He has no fixed abode, and has not around him in this state the semblance of a home. His business is that of a practicing lawyer. His office is in New York city. The office and duties as receiver are aside of his regular employment, necessarily temporary in character, and subject to terminate at the will of the court. I am of the opinion that he is not in any sense a resident of this district.

4. That, the petition having been filed on the same day with the answer, the defendant has submitted himself to the jurisdiction of

the state court, and cannot remove his cause. This objection is answered by the words of the removal act. It is not a question growing out of a conflict of jurisdiction. There is no conflict of jurisdiction. Indeed, the case is one in which the jurisdiction of the state courts and of the federal courts is concurrent. The case can be tried in either court, but the defendant has the privilege of trial in the federal court. This privilege is secured upon certain conditions, and none other. He must make and file his petition for removal in the suit at the time or any time before he is required by the laws of the state or the rule of the state court to answer or plead to the complaint or declaration, and shall file therewith his bond. It shall then be the duty of the state court to accept said petition and bond, and proceed no further in said suit. The suit goes over into the federal court in the same plight as it left the state court. Dill. Rem. Causes, § 150. In this case the defendant complied with the letter of the law, fulfilled the only condition required of him, and under the act his cause was thereupon removed. The motion to remand is refused.